# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――――――

№ 12-CV-2850 (JFB)(GRB)

―――――――――――――――

CHARLES YOUNG,

Plaintiff,

VERSUS

MICHAEL SPOSATO, NASSAU COUNTY, ARMOR CORRECTIONAL HEALTH SERVICES, INC., L.P.N. THOMAS MCCANN, M.D. OBIORA ANYOKU, SGT. B.A. MILLER, M.D. THEODORA KAYNJEMANZ, R.P.A. MARY DEVINE, AND MEDICAL STAFF,

Defendants.

―――――――――――――――

**MEMORANDUM AND ORDER**
January 13, 2014

―――――――――――――――

JOSEPH F. BIANCO, District Judge

*Pro se* Plaintiff Charles Young ("plaintiff" or "Young") brings this action against defendants Michael Sposato ("Sposato"), Sergeant B. A. Miller ("Miller"), and Nassau County ("the County") (collectively, "the County Defendants"), and Armor Correctional Health Services of New York, Inc. ("Armor"), Thomas McCann, L.P.N. ("McCann"), Obiora Anyoku, M.D. ("Anyoku"), Theodora Kaynjemanz, M.D. ("Kaynjemanz"), Mary Devine, R.P.A. ("Devine"), and "Medical Staff" (collectively, "the Armor Defendants"), alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that, while he was in pretrial incarceration at the Nassau County Correctional Center ("NCCC"), medical personnel utilized by the County refused to provide proper treatment for injuries to his left shoulder and left knee. He also claims that NCCC's grievance procedure inadequately addresses prisoner grievances.[1]

The County Defendants and the Armor Defendants (collectively, "defendants") move to dismiss the Section 1983 claims on the ground that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[2] For the following

―――

[1] The Armor Defendants also believe that plaintiff is asserting a claim under New York's Freedom of Information Law ("FOIL"). Plaintiff's oppositions do not mention a FOIL claim.

[2] The County Defendants also argue, *inter alia*, that plaintiff fails to allege any wrongdoing by them and that Sposato and Miller are shielded by qualified immunity. Defendants additionally argue that plaintiff fails to state a claim of deliberate indifference under the Eighth Amendment. Such issues are moot in light of the Court's ruling that plaintiff has failed to exhaust his administrative remedies and, thus, the Court does not address them.

reasons, the Court agrees, and concludes that there are no grounds for excusing the plaintiff's clear failure to exhaust under the PLRA. Thus, the Court grants the motions.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the amended complaint and exhibits attached to it and the original complaint. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motions and construes them in a light most favorable to plaintiff, the non-moving party.

1. Plaintiff's Medical Issues

Plaintiff was in pretrial detention at NCCC when the events at issue occurred.[3] (Amended Complaint ("AC") ¶ 1.) Armor provides medical services for NCCC inmates pursuant to a contract with the County. (Doody Decl. ¶ 3.)

On or about February 3, 2012, plaintiff injured his left shoulder while in NCCC's recreation yard. (AC ¶ 10.) McCann saw plaintiff at sick call five days later. (*Id.* ¶ 11.) Plaintiff said he did not believe that McCann was qualified to evaluate plaintiff. (*Id.*) According to plaintiff, McCann agreed that he could not properly evaluate plaintiff, but said that pursuant to Armor policy, a pretrial detainee must be seen at sick call at least three times before seeing a doctor. (*Id.*) McCann prescribed Motrin without consulting a doctor or physician's assistant. (*Id.*) After being seen several other times by staff that only provided over-the-counter medications, plaintiff was seen by Anyoku, a doctor, on February 28. (*Id.* ¶ 12.) Plaintiff described the injury and the resulting pain,

said that his left side was dominant and that his daily routine was being impacted, and requested to see a specialist and have an MRI. (*Id.* ¶ 14.) Anyoku, however, did not perform the usual triage or get out of her chair to examine the injury. (*Id.*) Instead, she allegedly responded that plaintiff would only receive outside treatment if he were in a life-threatening situation. (*Id.*) She also said that, if plaintiff's injury was that serious, he should take care of it upon his release or upon entering the New York State corrections system. (*Id.*) Anyoku did not recommend other treatment. (*Id.*) Plaintiff makes no further allegations about his shoulder injury.

On April 20, 2012, plaintiff injured his left middle finger and hyperextended his knee. (*Id.* ¶ 15.) At the medical department, Devine evaluated the swelling finger. (*Id.*) Plaintiff told Devine that his knee injury was more serious and needed outside care. (*Id.*) Devine ordered an x-ray on the finger but did not order anything for the knee. (*Id.*) Two days later, Corrections Officer Messena saw plaintiff and told plaintiff to see McCann to try to obtain medical attention for the knee. (*Id.* ¶ 16.) McCann allegedly said there was nothing he could do to help plaintiff be seen. (*Id.*) Although Messena arranged for plaintiff to return to the medical department that day, once plaintiff arrived, the attendants allegedly mocked him and asked, "[H]ow bad could it really be if you were able to walk in here?" (*Id.* ¶ 17.) They also said, "[I]t's the weekend, what do you expect us to do?" (*Id.*) The attendants gave plaintiff Motrin and an icepack and sent him back to his housing unit. (*Id.*) On April 23, McCann allegedly offered no assistance although plaintiff said he was in pain and had trouble ambulating. (*Id.* ¶ 19.) McCann also told plaintiff that, if he wanted a copy of his medical records, he would have to request them through an attorney. (*Id.*) On April 27, Anyoku saw plaintiff and did not

---
[3] Plaintiff presently is incarcerated at the Watertown Correctional Facility. (*See* Docket No. 63.)

examine him, prescribe new medications, or make a referral. (*Id.* ¶ 20.)

On May 8, 2012, plaintiff went to the recreation area because the swelling had decreased, but his knee quickly gave out. (*Id.* ¶ 21.) When he reached the medical department, Smith, a physician's assistant, ordered plaintiff to be removed from the general population and admitted into the infirmary ward until an orthopedic evaluation. (*Id.* ¶ 22.) Three days later, an LPN took plaintiff's crutches and told him to return to general population, pursuant to Devine's order. (*Id.*) The next day, Anyoku saw plaintiff and discovered that an error had occurred and that the orthopedic referral had not been made, although plaintiff's charts indicated that he needed an evaluation. (*Id.* ¶ 23.) Anyoku filled out a consultation request and marked it "urgent," but she did not return plaintiff's crutches or move him back to the infirmary. (*Id.*)

On May 16, 2012, an orthopedist diagnosed a severe cartilage tear and recommended that plaintiff return to the infirmary ward. (*Id.* ¶ 24.) The orthopedist prescribed an MRI and napersen for pain. (*Id.*) Two days later, plaintiff's pain increased, and he submitted sick call slips stating that his pain medications were inadequate. (*Id.* ¶ 25.) Smith agreed to prescribe an alternative anti-inflammatory, Mobic, and a muscle relaxer. (*Id.*) Plaintiff alleges that the medication was not changed. (*Id.*) Plaintiff claims that he then met with Kaynjemanz, who was confrontational when plaintiff asked why he was not being seen, asked why she should prescribe Mobic because plaintiff would become addicted, and never prescribed anything. (*Id.*) On June 20, 2012, plaintiff's crutches became caught between two chairs and he fell. (*Id.* ¶ 26.) Plaintiff re-injured his knee and he could not stand. (*Id.*) Plaintiff was not seen by a doctor and only received Motrin. (*Id.*) Plaintiff refused that treatment because the Motrin was not helpful and demanded to be seen by someone with medical authority. (*Id.*; *see* Refusal of Treatment, AC Ex. 4.)

Plaintiff had an MRI on August 17, 2012, after he transferred to New York State custody. (AC ¶ 33.) The MRI showed a hyperextension injury and cartilage tear. (*Id.*; *see* MRI Report, AC Ex. 12.) Plaintiff received surgery on October 23, 2012, leaving him to ambulate with a cane and crutches for over six months. (AC ¶ 33.) Plaintiff claims that he now experiences numbness down the right side of his back through his right leg and foot. (*Id.*)

2. Grievances

An exhibit attached to the original complaint details NCCC's grievance procedure. (Complaint, at 48–53.) Plaintiff does not plead or argue that he never received any information about the grievance procedure while at NCCC. As relevant here, according to the three-part grievance process, "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance." (*Id.* at 49–50.) The inmate must submit a grievance form, which is reviewed by a grievance coordinator. (*Id.* at 50.) Within two business days after receiving the grievance coordinator's written determination, the grievant may appeal to the chief administrative officer or his designee. (*Id.* at 50–51.) Within three business days of receiving the chief administrative officer's determination, the grievant may appeal any grievance denied by the facility administrator to the State Commission of Correction by indicating his desire to appeal. (*Id.* at 51.) The matter is then referred to the Commission's Citizens'

3

Policy and Complaint Review Council ("CPCRC").[4] (*Id.*)

Plaintiff filed a grievance on March 30, 2012 regarding the medical care for his shoulder. (*See* AC ¶ 27; March 30 Grievance Form, AC Ex. 5 (complaining about sick call procedures and medical evaluations).) On April 10, Corrections Officer Marcolini spoke with plaintiff about the grievance. (AC ¶ 27.) Plaintiff explained his difficulties with the Armor staff, and Marcolini wrote an injury report and took plaintiff to the medical department, but the personnel there claimed that plaintiff had not reported the injury in the first place. (*Id.*; *see* April 10 Injury Report, AC Ex. 6.) According to the March 30 Grievance Form, NCCC accepted the grievance. Plaintiff also accepted the grievance coordinator's decision and did not appeal.

Plaintiff filed a grievance on April 28 regarding the care for his left knee on April 20. (AC ¶ 29; April 28 Grievance Form, AC Ex. 7.) On May 9, an officer told plaintiff that Miller said the grievance was not proper because it was not submitted within five days of the incident in accordance with NCCC policy. (AC ¶ 29.) The April 28 Grievance Form states that this was a "Non-Grievable Issue" because plaintiff filed the grievance after the deadline. Plaintiff refused to sign the form and did not appeal.

Plaintiff filed another grievance on April 29, complaining that Armor had not provided him with his medical records on April 23. (April 29 Grievance Form, AC Ex. 9.) NCCC said this was a "Non-Grievable Issue" because it was untimely. Plaintiff appealed the decision. Plaintiff also filed a FOIL request with Armor on May 7. (FOIL Request, AC Ex. 10.) Plaintiff then filed a grievance on June 11, complaining that Armor had not responded to the FOIL request. (June 11 Grievance Form, AC Ex. 10.) NCCC accepted the grievance, and plaintiff accepted the grievance coordinator's decision and did not appeal.[5] (*Id.*) Plaintiff filed a final grievance regarding his sick call slips on June 20, but he was discharged on June 25. (June 20 Grievance Form, AC Ex. 11.)

### 3. Claims for Relief

Plaintiff alleges that the County was deliberately indifferent to his medical needs by not allocating proper funding to the jail for adequate health care, and that the grievance department was deliberately indifferent to his grievances. (AC ¶ 34.) Sposato allegedly was indifferent by implementing cost saving measures and not instituting a grievance procedure recommended in 1990. (*Id.* ¶¶ 37–38.) Miller allegedly was indifferent to plaintiff's grievances and did not determine their merits, instead telling plaintiff that his grievances were not grievable or that the matters were being investigated. (*Id.* ¶¶ 44–45.) Plaintiff alleges that Armor was indifferent to plaintiff's FOIL requests and consistently employed substandard policies, such as relying on lower level medical staff to prescribe medications and not consulting medical records. (*Id.* ¶¶ 35–36.) Specifically, Kaynjemanz refused to get an outside orthopedist or ensure proper treatment (*id.* ¶ 39); Anyoku did not properly evaluate plaintiff (*id.* ¶ 40); Devine improperly discharged plaintiff (*id.* ¶ 40);

---

[4] Defendants did not proffer a copy of the procedure, so the Court relies on plaintiff's exhibit. Plaintiff's grievance forms also indicate a progression of review from the grievance coordinator, to the chief administrative officer, to the CPCRC.

[5] Marcolini told plaintiff to file a FOIL request in early May. (AC ¶ 30.) After plaintiff complained that Armor ignored the request, Marcolini told plaintiff to write another FOIL request. (*Id.* ¶ 31.) Plaintiff received his records in September 2012. (*Id.* ¶ 22.)

4

and McCann did not attempt to ensure proper treatment (*id.* ¶ 43). Plaintiff seeks a declaratory judgment, compensatory damages, emotional damages, and punitive damages. (AC, at Relief Requested).

B. Procedural Background

Plaintiff filed the complaint in this action on June 4, 2012. Plaintiff filed his amended complaint on January 4, 2013. The County Defendants moved to dismiss on March 5, 2013. Plaintiff opposed on April 16, 2013, and the County Defendants replied on May 2, 2013. The Armor Defendants moved to dismiss on June 26, 2013. Plaintiff opposed on November 18, 2013. The Armor Defendants replied on December 2, 2013.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

Where, as here, the plaintiff proceeds *pro se*, courts are "'obliged to construe his pleadings liberally.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (stating that a *pro se* plaintiff's pleadings must be interpreted "to raise the strongest arguments that they suggest" (citation and internal quotation marks omitted)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In adjudicating these motions, the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2)

documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

III. DISCUSSION

A. Failure to Exhaust

Defendants argue that plaintiff cannot raise any constitutional claims under Section 1983 because he failed to exhaust the available administrative remedies. For the reasons set forth below, the Court agrees.[6]

1. Legal Standard

The Prison Litigation Reform Act of 1995 states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted). Therefore, the exhaustion inquiry

---

[6] As a threshold matter, plaintiff's claim that NCCC's grievance procedure is constitutionally inadequate fails as a matter of law. In order to assert a violation of procedural due process rights, a plaintiff must "first identify a [constitutionally protected] right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). Construing the *pro se* complaint liberally, as the Court must, it is clear that plaintiff complains that NCCC's grievance procedure did not adequately address *his* concerns, not that the procedures could *never* adequately remedy *any* inmate's concern. (*See, e.g.*, AC ¶ 45 ("While on its face it appeared that grievances were being handled and complaint was being investigated little, or nothing, was ever done to remedy plaintiff's complaints.").) Moreover, even assuming *arguendo* that plaintiff's theory were viable—which would be difficult to conclude because plaintiff did not appeal to the CPCRC—there is no reason to conclude that any alleged constitutional deficiency in the grievance procedure interfered with his ability to exhaust the administrative remedies in this case. Finally, the Court notes that (1) New York State's procedure for handling inmate grievance generally mirrors Nassau County's procedure, *see* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5, and (2) courts consistently have accepted the provisions of NCCC's grievance procedure in adjudicating prisoner claims, *see, e.g.*, *Medina v. Nassau Cnty. Sherriff Dep't*, No. 11-cv-228 (JFB)(GRB), 2013 WL 4832803, at *5 (E.D.N.Y. Sept. 10, 2013) (applying NCCC procedures); *Pooler v. Nassau Cnty. Med. Ctr.*, 848 F. Supp. 2d 332 (E.D.N.Y. 2012). In short, the Court concludes that no constitutional infirmities exist with respect to the grievance procedure at issue here.

requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) and *Woodford*, 548 U.S. at 88–90).

Prior to *Woodford*, the Second Circuit

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, the Second Circuit has continued to hold post-*Woodford* that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

2. Application

Although plaintiff agrees that he did not proceed through each tier of administrative review, plaintiff argues that his failure to exhaust should be excused because prison officials told him that certain grievances were "non-grievable" and that his complaints were being investigated. Defendants, however, have demonstrated that the failure to exhaust is inexcusable.[7]

---

[7] As a threshold matter, although the exhaustion issue is being raised at the motion to dismiss stage, the grievance procedure and the grievances at issue were attached to plaintiff's pleadings and, thus, are

7

a. Proper Exhaustion

"Proper exhaustion" requires a prisoner to use "'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 90 (emphasis in original)). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones*, 549 U.S. at 218, "proper exhaustion" under the PLRA "'demands compliance with [that] agency's deadlines and other critical procedural rules.'" *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 548 U.S. at 90). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero*, 467 F.3d at 176 (citing *Woodford*, 548 U.S. at 83–84); *see Woodford*, 548 U.S. at 95 ("For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. . . . We are confident that the PLRA did not create such a toothless scheme.").

The grievance procedure at NCCC details the appeals process and specifically and clearly states that grievances must be filed within five days of the act or occurrence giving rise to the grievance. As evidenced by the exhibits attached to the complaint, plaintiff repeatedly utilized the grievance procedure but never appealed through to the CPCRC. Except when he indicated he wanted to appeal the April 29 medical records-related grievance, plaintiff either accepted the grievance coordinator's decision and did not appeal, or refused to sign the reviewed grievance forms and did not appeal.[8] Therefore, because plaintiff failed to timely file his grievances in accordance with NCCC's procedures, failed to exhaust his appeals of grievances, or both, plaintiff has failed to properly exhaust his administrative remedies and the action must be dismissed. *See Medina* 2013 WL 4832803, at *5 (holding that plaintiff failed to exhaust remedies where his grievances were deemed insufficient and plaintiff failed to supply the necessary information, and plaintiff otherwise failed to appeal any grievances); *Williams v. Metro. Detention Ctr.*, 418 F. Supp. 2d 95, 101, 102 (E.D.N.Y. 2005) (dismissing *pro se* complaint where plaintiff could only show he exhausted two steps of four-step process

---

properly considered by the Court. Moreover, plaintiff has been given an opportunity to respond to defendants' exhaustion arguments, including whether any grounds exist for excusing his failure to exhaust. Thus, the Court concludes that the exhaustion issue is properly adjudicated in this case at the motion to dismiss stage. *See, e.g.*, *Miller v. Edminsten*, 161 F. App'x 787, 789 (10th Cir. 2006) ("As the Magistrate Judge correctly noted in his report and recommendations, the grievance materials submitted with the complaint clearly refute Miller's assertion that he exhausted his administrative remedies with respect to his free exercise of religion claim. Thus, we conclude the district court properly dismissed the claim without prejudice."); *Wright v. Gardener*, 57 F. App'x 666, 668 (6th Cir. 2003) (analyzing multiple grievances attached to complaint and concluding, *inter alia*, that "Wright clearly did not exhaust his remedies for his excessive force claim prior to this initiation of this suit, and he may not exhaust his remedies during the pendency of this action. . . . In light of Wright's failure to appeal his excessive grievance to the highest administrative authority, the claim was properly dismissed without prejudice."); *Walls v. O'Connor*, No. 12-11874, 2013 WL 572449, at *2 (E.D. Mich. Jan. 22, 2013) ("[I]t is permissible to consider, in the context of a motion to dismiss, documents such as the grievances and grievance responses attached to the complaint").

[8] With respect to the April 29 medical records-related grievance, as noted *supra*, plaintiff subsequently received those records and that grievance is not the subject of any specific claim in this lawsuit.

8

mandated by prison's guidelines); *see also Morrison v. Stefaniak*, 12–4111, 2013 WL 3214625, at *1 (2d Cir. June 27, 2013) (summary order) (upholding dismissal of complaint because plaintiff failed to appeal the Inmate Grievance Resolution Committee's decision); *Valentine v. Lindsay*, 10–CV–868, 2011 WL 3648261, at *7 (E.D.N.Y. Aug. 17, 2011) (prisoner failed to exhaust his administrative remedies when he untimely appealed grievance).

### b. Availability of Administrative Remedies

Plaintiff argues that his failure to exhaust should be excused because NCCC personnel told him that certain complaints were non-grievable, being investigated, or both. For the reasons set forth below, this argument is without merit.

The Second Circuit has stated that, if a prisoner has failed to exhaust, the Court must determine "whether administrative remedies were in fact 'available' to the prisoner . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686 (internal citations omitted). It is clear that "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted); *see also Smith v. Woods*, No. 03–CV–480, 2006 WL 1133247, at *15 (N.D.N.Y. Apr. 24, 2006) (Report and Recommendation) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation, the formal grievance proceeding required by the prison grievance system was never 'available' to plaintiff within the meaning of the PLRA." (internal alterations, citations, emphasis, and quotation marks omitted)).

Here, plaintiff does not adequately allege or show that NCCC's grievance procedure was not "available" to him due to misrepresentations by prison officials. *See Hemphill*, 380 F.3d at 686. Plaintiff proffers no reason for filing the grievances in an untimely manner, which was the only reason any complaint was classified as "non-grievable." Nor does he explain why he did not appeal most of the grievances even after he felt that NCCC and Armor were not addressing his concerns. Moreover, plaintiff appealed one of the two "non-grievable" complaints—namely, the medical-records grievance, which demonstrates his understanding of his ability to appeal a determination that it was "non-grievable." (*See* April 29 Grievance Form.) In short, nothing indicates that prison officials attempted to prevent plaintiff from timely invoking his administrative remedies. Further, plaintiff has not alleged or argued that he was unaware of the appeals process, *see Ruggiero*, 467 F.3d at 178 (holding that inmate had not exhausted his administrative remedies when he did not claim "that he was unaware of the grievance procedures contained within [the Inmate Handbook] or that he did not understand those procedures"), or that he reasonably believed pursuing a grievance would be "futile or impossible" through the introduction of evidence regarding "prison officials' threats, beatings" or other misconduct, *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Moreover, plaintiff's situation is entirely distinguishable from those cases in

which defendants were precluded from asserting this affirmative defense because prison officials told the inmate—erroneously or not—that a complaint could not be pursued through the normal grievance process. *See Williams v. Suffolk Cnty.*, 11–CV–5198, 2012 WL 6727160, at *5–6 (E.D.N.Y. Dec. 28, 2012) (officials erroneously told plaintiff matter could not be pursued through normal grievance process); *Feliciano v. Goord*, 97 CIV. 263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss because, *inter alia*, officials told plaintiff that complaint involved non-grievable security matter).

Plaintiff also does not argue that special circumstances warrant excusal from the requirement of proper exhaustion and, in any event, the Court finds that none exist. Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion. *See Ruggiero*, 467 F.3d at 175 (describing "special circumstances" as "a *reasonable misunderstanding* of the grievance procedures, [thereby] justify[ing] the prisoner's failure to comply with the exhaustion requirement") (emphasis added); *Harty v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010) ("Among the circumstances potentially qualifying as 'special' under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute cannot be grieved."). No such special circumstances are present in this case.

Therefore, a liberal reading of plaintiff's pleadings and documents attached thereto make clear that he has failed to exhaust his administrative remedies and he has not plausibly alleged any reason to excuse that failure. Accordingly, the Court grants the motions to dismiss the Section 1983 claims for failure to exhaust in accordance with the PLRA. The dismissal is with prejudice because the "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004). Among other things, because plaintiff is no longer in the Nassau County prison system, and because any appeal also would be untimely, plaintiff would not be able to pursue his administrative remedies at this time as to the claims against these defendants. *See, e.g.*, *Tompkins v. Beane*, No. 9:10-CV-1200 (LEK/RFT), 2012 WL 3082574, at *5 (N.D.N.Y. June 12, 2012) ("[I]f the prisoner failed to exhaust administrative remedies which were available to him after the onset of conditions giving rise to his complaints, yet such remedies are no longer available, *i.e.*, prisoner was transferred to another institution or released from custody, then it is proper for the court to dismiss the complaint with prejudice because any attempts to exhaust would be futile.")

### B. State Law Claims

It is not clear that plaintiff actually asserts any state law claims. Regardless, the Court determines that exercising supplemental jurisdiction over any state law claims, to the extent that they exist, is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y.

June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims, if they exist, because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), any state law claims are dismissed without prejudice to re-filing in state court.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss and dismisses the Section 1983 claims with prejudice. Any state law claims, to the extent they exist, are dismissed without prejudice to re-filing in state court. The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   January 13, 2014
         Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. The County Defendants are represented by Richard J. Femia and Pablo Fernandez of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501. The Armor Defendants are represented by John Doody and Suzanne Aribakan, of Lewis Brisbois Bisgaard & Smith, LLP, 77 Water Street, 21st Floor, New York, NY 10005.